IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NOELIA DONAMARIA, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No.   24 C 9535 |
| v. | ) ) | |
| REPRODUCTIVE GENETIC INNOVATIONS, INC., | ) ) ) | Judge Robert W. Gettleman |
| Defendant. | ) ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Noelia Donamaria lives in Illinois, and brought this action under the Class

Action Fairness Act, 28 U.S.C. § 1332(d), on behalf of herself, a nationwide class, and an Illinois

class against defendant, Reproductive Genetic Innovations, Inc., an Illinois company that

markets and sells genetic testing.   According to plaintiff, she and the class members each spent

thousands of dollars on defendant's preimplantation genetic testing for aneuploidy (a genetic

disorder where the number of chromosomes is not 46)—known as "PGT-A testing."   Plaintiff

alleges that defendant falsely marketed its PGT-A testing as being a proven and reliable method

of decreasing the chance of having a miscarriage and of increasing the chance of having a

healthy baby.

Plaintiff asserts seven counts in her complaint: a claim for a violation of Illinois'

Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/2, and Uniform

Deceptive Trade Practices Act ("UDTPA"), 815 ILCS 510/2 (Count I); a claim for breach of the

implied warranty of merchantability (Count II); a claim for breach of the implied warranty of

usability (Count III); a claim of fraud (Count IV); a claim of fraudulent concealment (Count V); a claim of unjust enrichment (Count VI); and a claim for breach of express warranty (Count VII).

After plaintiff filed her complaint, defendant moved to dismiss it in its entirety under Fed. R. Civ. P. 12(b)(6). But because plaintiff and defendant appeared to both be Illinois citizens, the court struck defendant's motion without prejudice to renewal, and directed the parties to file briefs that set forth the basis for the court's subject matter jurisdiction in this case—including, for example, by explaining how there is "minimal diversity" under 28 U.S.C. § 1332(d)(2)(A). After reviewing their briefs, the court issued an order [39] explaining that it had found that it has subject matter jurisdiction, and that it was, on its own motion, renewing defendant's motion to dismiss. For the reasons below, the court now grants in part and denies in part defendant's motion to dismiss.

## BACKGROUND

Plaintiff alleges the following facts in her complaint, which are taken as true in resolving defendant's motion. Alam v. Miller Brewing Co., 709 F.3d 662, 665-66 (7th Cir. 2013). One-third of the people in the United States have sought, or know someone who has sought, fertility treatments. In vitro fertilization ("IVF") is one such treatment. IVF is a process of fertilization in which an egg is combined with sperm in vitro—"in glass"—to create embryos.

Defendant markets and sells PGT-A testing—originally known as "preimplantation genetic screening" or "PGS testing"—as an add-on to the IVF process that purports to screen embryos for chromosomal abnormalities. Without PGT-A testing, the fertilized egg undergoes embryo culture for two to six days and is then transferred to the uterus to establish a pregnancy. Defendant encourages people to purchase its PGT-A testing to determine which embryos are

2

suitable for transfer. When PGT-A testing is performed, a biopsy is taken from the embryo, during which an embryologist creates a hole in the embryo to remove cells from it. Those cells are then sent to defendant's laboratory for PGT-A testing. The test results purport to determine which embryos are "euploid" (best suited for implantation) and which embryos are "aneuploid" (abnormal and poorly suited for implantation).

While the removed cells are at the lab, the embryos are frozen and stored at the IVF clinic. These embryos are fragile and can be damaged by the freezing and thawing process that occurs while the PGT-A testing is performed. Experts thus caution that performing additional biopsies for PGT-A testing can cause damage to the embryo and negatively affect IVF outcomes.

Defendant advertises various benefits of its PGT-A testing. Yet, plaintiff alleges, research stretching back to the early 2000s shows that those representations are false and misleading. For example, defendant represents in videos and on its website pages that PGT-A testing is 98% accurate. But defendant fails to provide support for that assertion, and it is belied by the scientific literature. Defendant also markets and advertises on its website that PGT-A testing improves pregnancy rates by 20%. But defendant knows this statement is false and misleading to consumers because "no valid scientific research has concluded this to be accurate," and "[i]n fact," the American Society for Reproductive Medicine ("ASRM") "has repeatedly noted that trials concluded that overall pregnancy outcomes in frozen embryo transfers were similar between conventional IVF and PGT-A."

Defendant also falsely states that its PGT-A testing benefits every couple—especially individuals of advanced maternal age. In particular, defendant falsely and misleadingly "states on its website that its tests are the only way to determine if an 'embryo contains the normal

3

number of chromosomes' and therefore every couple benefits from PGT-A." But "[p]ublished scientific results have reported no benefit of PGT-A to live birth rates for women under 35 and unchanged ongoing embryo implantation rates of ~50% for PGT-A and non-PGT-A."

On its website, moreover, defendant falsely states that its PGT-A testing increases the success of IVF. "[R]esearch as early as 2016," however, "determined that PGT-A decreased live birth rates when compared to IVF without testing." And at the same part of the website, defendant further "misleads consumers by stating that its PGT-A will decrease the chance of miscarriage." But a "randomized controlled trial to evaluate the benefit of PGT-A for embryo selection in frozen-thawed embryo transfer found that PGT-A did not reduce miscarriage rates."

Defendant also falsely states on its website that PGT-A testing increases the chances of a healthy baby. But "[r]esearch has shown that there is a threefold increase in live birth rates for those that did not have PGT-A testing performed and a reduction in live birth rates for the group where PGT-A was [used]."

Defendant has also kept from customers material information. Defendant, for example, fails to disclose: that "conducting a biopsy on an embryo is a prerequisite for PGT-A testing"; that "damage to embryos caused by biopsy may be the reason for unsuccessful IVF outcomes following PGT-A" testing; that there have been "numerous scientific studies and opinions of professional organizations" detailing the problems with PGS and PGT-A testing; that PGT-A testing "cannot reliably reflect whether an entire embryo is aneuploid, or will remain so"; that "there is a substantial probability that an embryo may be misdiagnosed, and the test results inaccurate"; that the biopsy "may not accurately reflect the final chromosomal outcome of embryos"; and that "false positives and false negatives [can] occur with PGT-A testing."

4

Defendant was aware of scientific literature that suggested that there was a problem with the results of PGS testing, with strictly defining embryos as either euploid or aneuploid, and with the resulting consequences of delivering aneuploid test results to patients. Defendant also knew, or should have known, that PGT-A is unproven and does not produce accurate or reliable results. Yet defendant did not incorporate this knowledge into its marketing and advertising, or inform its customers on the state of scientific knowledge and the issues inherent in such testing.

In October 2022 and July 2023, plaintiff purchased PGT-A testing from defendant, paying around $6,000 in total. She did so in reliance on defendant's false and misleading statements and on defendant's omissions of material information. Indeed, plaintiff was "exposed to [d]efendant's representations prior to and immediately after purchase," and "saw" the "generalized representations" described above "that were repeated by [d]efendant throughout [its] promotional materials."

So on October 4, 2024, plaintiff filed this lawsuit "to remedy the unfair and deceptive business practices arising from [d]efendant's marketing and sale of PGT-A testing as a proven, accurate, and reliable method to decrease the chance of miscarriage and increase the chance of giving birth to a healthy baby." In doing so, she brings this case on behalf of all persons in the United States who have purchased PGT-A testing from defendant and on behalf of all Illinois residents who purchased PGT-A testing from defendant. She alleges that if plaintiff and other class members had known that PGT-A testing was unproven—and had known about the true efficacy and accuracy rates of it—they would not have purchased it.

5

## DISCUSSION

Defendant has moved to dismiss all seven counts in the complaint under Fed. R. Civ. P.

12(b)(6). Rule 12(b)(6) provides for dismissal based on a plaintiff's "failure to state a claim

upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 8 "prescribes the

information [that] a plaintiff must present about the merits of his claim at the outset of litigation:

'a short and plain statement of the claim showing that [he] is entitled to relief.'" Berk v. Choy,

No. 24-440, 2026 WL 135974, at *3 (U.S. Jan. 20, 2026) (quoting Fed. R. Civ. P. 8(a)(2)

(brackets in original)). So to rule on a Rule 12(b)(6) motion, the court must determine whether

the plaintiff has adequately presented a statement of the claim that shows entitlement to relief.

To do so, the court "asks only whether the complaint's factual allegations, if taken as

true, 'state a claim to relief that is plausible on its face.'" Id. at *4 (Bell Atl. Corp. v. Twombly,

550 U.S. 544, 555 (2007)); see also Johnson v. City of Shelby, Miss., 574 U.S. 10, 12 (2014) ("A

plaintiff . . . must plead facts sufficient to show that her claim has substantive plausibility."). "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft

v. Iqbal, 556 U.S. 662, 678 (2009); see also Johnson, 574 U.S. at 12 ("Petitioners stated simply,

concisely, and directly events that, they alleged, entitled them to damages from the city.").

"[W]here the well-pleaded facts do not permit the court to infer more than the possibility of

misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to

relief." Iqbal, 556 U.S. at 679 (cleaned up). In other words, a claim for relief "cannot be

merely conceivable or speculative." Taylor v. Salvation Army Nat'l Corp., 110 F.4th 1017,

1028 (7th Cir. 2024). Rather, the "plaintiff must present a story that holds together"—with

"sufficient details to make the plaintiff['s] account one that *could* have happened and, if it did happen, states a claim cognizable under the governing law." Id. (cleaned up) (emphasis in original).

In determining whether the plaintiff has presented such a story, the court must "understand" the law "on which the claims of the complaint are predicated." Id. This means that the court must review the relevant statutes to see if the plaintiff's story falls within the scope of what those statutes protect and "gives adequate notice" to the defendant "of the gravamen of the plaintiff['s] grievance." Id. At the same time, the court must be mindful that "the Federal Rules of Civil Procedure do not require code pleading"—that is, "plead[ing] the elements of a cause of action along with facts supporting each element." Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana, 786 F.3d 510, 517 (7th Cir. 2015); see also Deslandes v. McDonald's USA, LLC, 81 F.4th 699, 705 (7th Cir. 2023) (a plaintiff need not "match facts to elements of legal theories").

In the end, the "plausibility" "principle does not, and under the strictures of Rule 8 cannot, present a high barrier to the pleader." Taylor, 110 F.4th at 1028. In fact, the Supreme Court recently reiterated this point in Berk: "By design, this system of pleading makes it relatively easy for plaintiffs to subject defendants to discovery—even for claims that are likely to fail." 2026 WL 135974, at *4. The Court therefore admonished lower federal courts not to attempt "[t]o protect defendants from this burden" by "tr[ying] to require more information for certain kinds of claims," as the Court has "consistently rejected such efforts." Id. The Court thus concluded: "Unless the Federal Rules single out a claim for special treatment, see, *e.g.*,

[Rule] 9, Rule 8 sets a ceiling on the information that plaintiffs can be required to provide about the merits of their claims." Id.

Here, some of the complaint's allegations are in fact "held to a heightened pleading standard under [Rule] 9(b)" because they sound in fraud. Sava v. 21St Century Spirits, LLC, No. 22 C 6083, 2024 WL 3161625, at *5 (N.D. Ill. June 25, 2024). Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake," but that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Rule 9(b)'s particularity requirement for the fraud aspect "ordinarily" requires a plaintiff to describe the "'who, what, when, where, and how' of the fraud—the first paragraph of any newspaper story." Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co., 631 F.3d 436, 441-42 (7th Cir. 2011) (cleaned up). Such detail "is required in part because of the potential stigmatic injury that comes with alleging fraud and the concomitant desire to ensure that such fraught allegations are not lightly leveled." Id. at 442. But the precise level of detail that must be "included in that first paragraph . . . may vary on the facts of a given case." Id.

To that end, the "who, what, where" formulation "is not meant to suggest that every possible who, what, where, when, or how within the alleged factual circumstances must be stated with particularity; . . . it is meant only to distill the specific inquiries under Rule 9(b)." Sava, 2024 WL 3161625, at *11. Those are: "the identity of the person making the misrepresentation,

8

the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." Id. at *5 (citation omitted).

Rule 9(b), moreover, applies to allegations—not claims. "[S]o only those allegations sounding in fraud are held to the rule's 'particularity' requirement; all other allegations must satisfy only *Twombly* and *Iqbal*'s 'plausibility' requirement, even if those allegations support a claim where fraud is an essential element." Id. Thus, "when an allegation comes up short" under Rule 9(b), "the court simply disregards the allegation and does not *automatically* dismiss the claim." Id. at *6 (emphasis in original).

With these principles in mind, the court turns to each of the counts.

### Count I

In Count I, plaintiff alleges that defendant violated the ICFA, 815 ILCS 505/2, and the UDTPA, 815 ILCS 510/2. The ICFA "protects consumers against fraud, unfair methods of competition, and other unfair and deceptive business practices." Vanzant v. Hill's Pet Nutrition, Inc., 934 F.3d 730, 736 (7th Cir. 2019) (cleaned up). "Deceptive or unfair practices include any 'misrepresentation or the concealment, suppression or omission of any material fact.'" Id. (quoting 815 ILCS 505/2). "The UDTPA in turn declares the following business practices to be deceptive, among others: 'advertis[ing] goods or services with intent not to sell them as advertised; . . . [or] . . . engag[ing] in any other conduct which similarly creates a likelihood of confusion or misunderstanding.'" Kahn v. Walmart Inc., 107 F.4th 585, 597 (7th Cir. 2024) (quoting 815 ILCS 510/2(a)(9) & (12)).

Because Count I focuses almost exclusively on the ICFA—mentioning the UDTPA in the title of the Count only—the court starts with the ICFA. To recover on a claim under the ICFA,

9

a plaintiff must "prove that the defendant committed a deceptive or unfair act with the intent that others rely on the deception, that the act occurred in the course of trade or commerce, and that it caused actual damages." Vanzant, 934 F.3d at 736. Deceptive conduct and unfair practice are "separate categories; deceptive conduct is distinct from unfair conduct." Id. at 738. "A claim under the [ICFA] may be premised on either (or both), but the two categories have different pleading standards." Id. When, as here, some portion of "the claim rests on allegations of deceptive conduct, then Rule 9(b) applies and the plaintiff must plead with particularity the circumstances constituting fraud." Id.

Defendant argues here that plaintiff's Count I should be dismissed for two reasons: (1) plaintiff fails to plead fraud with Rule 9(b) specificity; and (2) plaintiff failed to attach promotional materials or contracts to the complaint. As for the first argument, defendant contends that plaintiff failed to "explain[ ] with the requisite specificity how [d]efendant engaged in the alleged deceptive practices." According to defendant, plaintiff needed to state "(1) how [d]efendant became aware that their representations were deceptions; (2) when [d]efendant became aware that their representations were deceptions; (3) how [d]efendant intended that consumers rely on their alleged deceptions; and (4) how [p]laintiff's alleged damage was proximately caused by the deception." As for its second basis, defendant asserts that "plaintiffs are statutorily required" under 735 ICLS 5/2-606 "to attach to their complaint the written instruments upon which their claim is based." Plaintiff's "screenshots of [d]efendant's website

that are littered throughout the complaint might provide some indication of a document's content," defendant concedes, but that does not meet section 5/2-606's requirement.

Plaintiff responds that the complaint "easily satisfies" Rule 9(b): it provides the who (defendant), the what (deceptive representations about PGT-A), the when and the where (in marking materials before purchasing), and the how (the PGT-A test was inaccurate and unreliable and caused plaintiff to spend thousands of dollars). These allegations, plaintiff says, mirror those found sufficient by the Seventh Circuit in Vanzant. As for defendant's argument that plaintiff insufficiently pleaded defendant's intent and awareness, plaintiff asserts that Rule 9(b) allows both to be alleged generally, and the complaint alleges that defendant was aware of scientific studies. And as for attaching documents, plaintiff contends that federal—not Illinois—pleading requirements apply here, and the federal rules do not have any such requirement.

In reply, defendant argues that plaintiff "continues to omit the 'who'" and instead merely (and insufficiently) references "defendant." Defendant further asserts that, although plaintiff "has correctly pointed out that ICFA actions in Federal Court need not comply with" section 5/2-606, plaintiff's reliance on "ambiguous promotional materials with alleged representations" is insufficient to allege the "what" and the "how."

The court finds that plaintiff has the better of the arguments. First, as plaintiff correctly notes—and defendant concedes in its reply brief—plaintiff did not need to attach any written documents to plead her claim. That is because "state requirements for pleading do not apply in federal litigation." Farzana v. Ind. Dep't of Educ., 473 F.3d 703, 705 (7th Cir. 2007). And the Federal Rules of Civil Procedure do not require a plaintiff to attach documents to the complaint

11

to state a plausible claim.   See Call v. Logan, No. 21-cv-5859, 2022 WL 1185150, at *2 (N.D. Ill. Apr. 21, 2022) ("unlike Illinois Code of Civil Procedure 735 ILCS 5/2-606, the Federal Rules of Civil Procedure do not require a plaintiff to attach a copy of a contract to the complaint to state a plausible breach of contract claim").

Second, plaintiff has pleaded its allegations of fraud with sufficient particularity here. Plaintiff alleges that defendant made several specific misrepresentations about PGT-A testing's accuracy (98%) and its ability to improve pregnancy rates, reduce miscarriage rates, and increase the chances of a healthy baby.   She excerpts and hyperlinks to specific webpages that contain the misrepresentations.   In fact, defendant itself admits that "screenshots of [its] website that are littered throughout the complaint."   And she further alleges that she saw these representations before purchasing PGT-A testing in October 2022 and July 2023, and that she spent $6,000 plus additional costs based on those representations that she would not have otherwise spent.   Under the facts of this case, plaintiff has pleaded fraud "with particularity."   Vanzant, 934 F.3d at 739.

Indeed, Vanzant is instructive.   The plaintiffs there owned cats, whose veterinarians prescribed cat food manufactured by Hill's Pet Nutrition, Inc., and sold under Hill's "Prescription Diet" brand.   Id. at 734.   After years of purchasing this higher-priced cat food from Pet Smart, they learned that the Prescription Diet cat food was not materially different from nonprescription food and that they needed no prescription.   Id.   They thus filed a class-action lawsuit against Hill's and PetSmart, Inc., asserting, among other things, an ICFA claim.   Id.

The district court dismissed that claim for failing to meet Rule 9(b)'s particularity requirement. Id. The Seventh Circuit reversed. Id. at 735.

In doing so, the court explained that the plaintiffs had alleged in their complaint that "the prescription requirement, prescription label, and associated marketing materials for Hill's Prescription Diet were deceptive; that [plaintiffs] saw the specific 'prescription' language and symbols when they made their purchases; that the prescription pet food was something less than they expected; . . . that they suffered damages because they paid a higher price"; and that they "saw marketing materials for Prescription Diet pet food before purchasing the cat food." Id. at 739. The court held that these allegations provided the "who," "what," "when," "where," and "how" with particularity, and that the plaintiffs had thus "plead[ed] a deceptive-practices claim to the degree of particularity required by Rule 9(b)." Id. Put simply, "[n]othing more [wa]s needed." Id.

Here, as in Vanzant, nothing more is needed. Plaintiff has provided: the "who" (defendant); the "what" (the specific false statements about PGT-A testing's accuracy and performance); the "when" (before purchasing in 2022 and 2023); the "where" (the statements are on defendant's website and marketing materials and plaintiff purchased PGT-A from defendant), and the "how" (by falsely representing on defendant's website and in marketing materials, which caused plaintiff to purchase PGT-A testing that it would not otherwise have purchased and to suffer damages). This is sufficient to meet Rule 9(b)'s particularity in this case. See id.; see also Geske v. PNY Techs., Inc., 503 F. Supp. 3d 687, 707 (N.D. Ill. 2020) (plaintiff satisfied Rule 9(b) by alleging that "[i]n February 2018, [she] purchased PNY's PowerPack 5200 in a Meijer store in Illinois," that "PNY made specific misrepresentations on the packaging of its

13

power bank," and that she "was exposed to the deceptive representation when she picked up the power bank and saw the product's name and total mAh in bold on the packaging"); Womick v. Kroger Co., No. 21-CV-00574-NJR, 2022 WL 673095, at *4 (S.D. Ill. Mar. 7, 2022) (plaintiff satisfied Rule 9(b) "by alleging the 'who': Kroger; the 'what': the number of cups the canisters represent they can make . . .; the 'when': his purchases in 2020-2021 from Kroger in Carbondale, Illinois, prior to which he read the label; the 'where': on the label of the canisters; and the 'how': by representing that the products can make a certain number of cups that they are incapable of making, which caused Womick to overpay").

Defendant's arguments to the contrary fail. As for defendant's contention that plaintiff failed to plead with Rule 9(b) particularity how and when defendant became aware that their representations were deceptions and how defendant intended for consumers to rely on its deceptions, plaintiff did not need to do so. Again, Rule 9(b) expressly states that "intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b) (emphasis added). That is precisely what plaintiff has done here. She alleges: that "[t]he proponents of PGS, including [d]efendant, were aware of the [relevant] scientific literature, and that a problem existed with the results of PGS"; that defendant was "aware of the scientific studies and research concerning PGT-A as [d]efendant reviewed the research and publications concerning PGT-A, including from major medical associations such as ASRM"; and that defendant "knew or should have known that [its] misrepresentations and omissions were false

and misleading and intended for consumers to rely on."   Defendant's arguments about intent and awareness thus fall flat here.

Perhaps recognizing this, defendant argues for the first time in its reply brief that plaintiff merely references "defendant" and therefore "continues to omit the 'who.'"   But this new argument is also unavailing.   For starters, "an argument raised for the first time in a reply brief is forfeited."   Narducci v. Moore, 572 F.3d 313, 324 (7th Cir. 2009).   Regardless, defendant's assertion is without merit: "only the institutional identity is required for fraud claims where," as here, "the only defendant is a corporation."   Advanced Ambulatory Surgical Ctr., Inc. v. Cigna Healthcare of Ill., No. 13 C 7227, 2014 WL 4914299, at *5 (N.D. Ill. Sept. 30, 2014) (cleaned up).   And courts routinely find that allegations that specify the corporate defendant as the "who" meet Rule 9(b)'s particularity requirement.   See, e.g., Vanzant, 934 F.3d at 739; see also Geske, 503 F. Supp. 3d at 707 (allegations identified corporate defendant "PNY" as the who); Womick, 2022 WL 673095, at *4 (allegations identified Kroger as "the 'who'").

In short, the court finds that plaintiff has sufficiently pleaded an ICFA claim.   So the court denies defendant's motion to dismiss Count I to the extent that it is based on an ICFA claim.

Plaintiff's attempt to plead a UDTPA claim in Count I, however, is another matter. Although (as just discussed) plaintiff has pleaded her fraud allegations with particularity, "unlike the ICFA, [the UDTPA] does not authorize actual damages."   Kahn, 107 F.4th at 606.   To the contrary, the "UDTPA only allows a plaintiff to recover injunctive relief."   Reid v. Unilever U.S., Inc., 964 F. Supp. 2d 893, 917 (N.D. Ill. 2013).   So plaintiff "needed to allege (and would ultimately need to prove) a likelihood of future injury."   Kahn, 107 F.4th at 606.   But she has

15

failed to do so.   Indeed, she has not alleged that she "intends to continue" purchasing from

defendant "in the future or that [s]he would be unable to avoid future injury after having

discovered [defendant]'s alleged practices."   Id. (dismissing a UDTPA claim).   The court

therefore dismisses (without prejudice) Count I to the extent that it is based on a UDTPA claim.

### Counts II & III

In Counts II and III, plaintiff asserts claims for violations of state laws codifying Uniform

Commercial Code § 2-314, the implied warranty of merchantability and of usability,

respectively.   Because the parties essentially treat these two claims as one under the law of

implied warranty of "merchantability," the court will do the same here.

Under 810 ILCS 5/2-314, "a warranty that the goods shall be merchantable is implied . . .

if the seller is a merchant with respect to goods of that kind."   810 ILCS 5/2-314.   "To be

merchantable, the goods must 'pass without objection in the trade under the contract description'

and must be 'fit for the ordinary purposes for which such goods are used.'"   Solvay USA v.

Cutting Edge Fabrication, Inc., 521 F. Supp. 3d 718, 725 (N.D. Ill. 2021) (quoting 810 ILCS 5/2-

314).   Generally, to state a claim for breach of implied warranty of merchantability, a plaintiff

must allege "(1) a sale of goods (2) by a merchant of those goods, and (3) the goods were not of

merchantable quality."   Letoski v. Coca-Cola Co., 753 F. Supp. 3d 650, 663 (N.D. Ill. 2024)

(quoting Brandt v. Boston Sci. Corp., 204 Ill.2d 640, 645 (2003)).

Defendant argues here that plaintiff fails to allege that the goods were not of

merchantable quality because she failed to "establish that PGT-A testing did not 'pass without

objection in the trade under the contract description,'" or that PGT-A testing "was not 'fit for its

ordinary purpose.'"   According to defendant, "[p]laintiff has neither attached a contract to which

16

the PGT-A testing did not pass description nor define what PGT-A testing's ordinary purpose is."

In response, plaintiff contends that she neither needed to attach any contract nor needed to plead the ordinary purpose as a "rote legal conclusion." According to plaintiff, the complaint extensively alleges that defendant "designed, manufactured, marketed, and sold PGTA to provide accurate and reliable results regarding whether an embryo has chromosomal abnormalities," and that defendant's PGT-A test "does not provide accurate and reliable results." So, she concludes, the court can infer from the allegations that defendant's PGT-A testing is not fit for its ordinary purpose.

The court finds that plaintiff has pleaded a plausible claim of breach of the implied warranty of merchantability. Again, to be merchantable, the goods must both "pass without objection in the trade under the contract description" and must be "fit for the ordinary purposes for which such goods are used." Solvay, 521 F. Supp. 3d at 725. Plaintiff has at least plausibly pleaded that defendant's PGT-A test failed to meet the latter requirement.

To be sure, "[a] plaintiff's allegation that the goods were not merchantable at the time of sale should be supported by an allegation of what the ordinary purpose of the good is." Id. at 726. But the allegation need not be express; "[t]he ordinary purpose of the goods can be inferred from the allegations in the Complaint." Albrosco Ltd. v. Prince Agri Prods., Inc., 545 F. Supp. 3d 656, 663 (C.D. Ill. 2021).

Here, the court can infer from the allegations what the ordinary purpose of defendant's PGT-A testing is. Indeed, plaintiff alleges that defendant markets and sells PGT-A testing as an add-on to the IVF procedure that purports to screen embryos for chromosomal abnormalities and

to determine which embryos are euploid and which embryos are aneuploid. That is PGT-A testing's ordinary purpose. At the same time, plaintiff alleges that defendant's PGT-A testing was not fit for that purpose. According to plaintiff's complaint: PGT-A testing "cannot reliably reflect whether an entire embryo is aneuploid, or will remain so"; "there is a substantial probability that an embryo may be misdiagnosed, and the test results inaccurate"; the biopsy "may not accurately reflect the final chromosomal outcome of embryos"; and that "false positives and false negatives [can] occur with PGT-A testing." Plaintiff has therefore plausibly alleged that defendant's PGT-A testing is not fit for its ordinary purpose. The court thus denies defendant's motion to dismiss Counts II and III.

## Count IV

In Count IV, plaintiff alleges a claim of fraud. "A common-law fraud claim in Illinois requires five elements: (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." Squires-Cannon v. Forest Pres. Dist. of Cook Cnty., 897 F.3d 797, 805 (7th Cir. 2018) (cleaned up).[1]

Defendant contends that plaintiff's allegation that defendant "knew or should have known" that the alleged misrepresentations were false fails Rule 9(b)'s particularly requirement.

---

[1] Defendant assumes that Illinois law governs this claim, and plaintiff does not contest this. The court therefore assumes for purposes of this motion that Illinois law applies. See Emplrs. Mut. Cas. Co. v. Skoutaris, 453 F.3d 915, 923 (7th Cir. 2006) ("As this case is brought under diversity jurisdiction, we apply the law of the forum state, Indiana, since neither party has challenged the district court's choice of law.").

According to defendant, plaintiff must plead facts sufficient to establish that Defendant "knew their statement was false." (Emphasis by defendant).[2] But, defendant asserts, plaintiff has not done so: her "attempts to cite studies, articles, and web pages about the accuracy of PGT-A testing" are insufficient.

Plaintiff responds, once again pointing out that Rule 9(b) permits "knowledge" to "be alleged generally." (Quoting Fed. R. Civ. P. 9(b)). And, plaintiff contends, she has done just that: she alleges that defendant "knew or should have known that their misrepresentations and omissions were false and misleading," and she "specifies each statement made by [d]efendant to sell its PGT-A and why defendant knew each was false by providing extensive scientific studies and statements against each statement." Plaintiff thus concludes that "it is more than reasonable to infer that [d]efendant"—"a corporation that designs, markets, and sells PGT-A, and serves as the location of the [Preimplantation Genetic Diagnosis International Society]"—"was aware of the scientific and medical consensus regarding PGT-A."

In reply, defendant argues that tying the existence of studies to defendant's knowledge is speculative. And, defendant continues, plaintiff's "own assertions in her Complaint" contradict the "research she cited." As a result, her "contention that it was reasonable to infer that Defendant was aware of the medical 'consensus,' is unfounded."

The court finds that plaintiff has plausibly pleaded defendant's knowledge for purposes of her fraud claim. Once again, Rule 9(b) expressly states that "intent, knowledge, and other

---

[2] The court notes that defendant purports to be quoting Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP, 475 F.3d 824, 841 (7th Cir. 2007), but this precise quote does not appear in that case. The court further notes that defendant miscites the case as "474 F.3d" when it is instead "475 F.3d."

conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). And, as with the ICFA claim, plaintiff has done that here. Again, she alleges: that "[t]he proponents of PGS, including [d]efendant, were aware of the [complaint's cited] scientific literature, and that a problem existed with the results of PGS"; that defendant was "aware of the scientific studies and research concerning PGT-A as [d]efendant reviewed the research and publications concerning PGT-A"; and that defendant "knew or should have known that [its] misrepresentations and omissions were false and misleading and intended for consumers to rely on." The court agrees with plaintiff that given her allegations about defendant designing, marketing, and selling PGT-A, and serving as the location for PGDIS's headquarters, it is reasonable to conclude that defendant was aware of relevant PGT-A research. See Santiago v. Tesla, Inc., 757 F. Supp. 3d 831, 842 (N.D. Ill. 2024) ("the Court will accept general allegations of knowledge insofar as they are consistent with reasonable inferences we can draw from the facts in the complaint" (cleaned up)). And as for defendant's contention that plaintiff's assertions may contradict the very research she relies on, that is a factual issue for resolution at a later stage of the case.

Because defendant has not shown that plaintiff failed to plausibly plead a fraud claim, the court denies the motion to dismiss Count IV.

## **Count V**

Plaintiff alleges fraud by concealment in Count V. To show fraudulent concealment in Illinois, a plaintiff must prove:

> (1) the concealment of a material fact; (2) that the concealment was intended to induce a false belief, under circumstances creating a duty to speak; (3) that the innocent party could not have discovered the truth through a reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection, and relied upon the silence as a representation that the fact did not exist; (4) that the concealed information was such that the injured party would have acted differently

20

had he been aware of it; and (5) that reliance by the person from whom the fact was concealed led to his injury.

Trs. of AFTRA Health Fund v. Biondi, 303 F.3d 765, 777 (7th Cir. 2002).[3]  "Rule 9(b)'s particular requirement also applies to fraudulent concealment claims."  Squires-Cannon, 897 F.3d at 805.

Defendant asserts that plaintiff has not met Rule 9(b) because plaintiff "fails to allege *how* or *when* [d]efendant supposedly became aware of the nonpeer reviewed studies and articles [p]laintiff cites to, *how* these studies and articles became a material fact, *who* as an agent of [d]efendant concealed the material fact, and *when* the material fact became concealed with an intent to induce a false belief."  (Emphasis by defendant).  Defendant concludes that plaintiff "demonstrated no facts to support [her] conclusory allegations that [d]efendant 'was aware' about the alleged problems and issues with PGT-A and concealed them from [p]laintiff with the intent to induce a false belief."

Plaintiff responds, arguing again that defendant's knowledge may be alleged generally. She further contends that the "how" and "when" "have nothing to do with how and when a defendant became 'aware' that its statements were fraudulent."  A fraudulent concealment claim, plaintiff argues, also has a "'more relaxed' standard 'than the typical fraud claim.'" (quoting Fed. Deposit Ins. Corp. v. Patel, No. 19-CV-6917, 2020 WL 6681348, at *2 (N.D. Ill. Nov. 12, 2020)).  And she has met that standard, she asserts, because she "alleges that [d]efendant knew of the problems with its PGT-A's accuracy and reliability . . ., failed to

---

[3]  Defendant again assumes that Illinois law governs this claim.  Plaintiff does not dispute this.

disclose that knowledge to [p]laintiff . . ., and [p]laintiff had no means of knowing that [d]efendant was omitting material information . . . ."

In reply, defendant asserts that Rule 9(b) applies fully to fraudulent concealment. Defendant further argues that "[w]hile it may be more difficult to plead with particularity the circumstances surrounding an omission . . . than an affirmative misrepresentation, Defendants are entitled to clear[ ] notice" of the allegations.  (Quoting McMahan v. Deutsche Bank AG, 938 F. Supp. 2d 795, 806 (N.D. Ill. 2015)).

The court finds that plaintiff has pleaded fraudulent concealment with sufficient particularity.  To begin with, the court once again agrees with plaintiff that knowledge may be alleged generally under Rule 9(b), and that defendant is wrong that the "how" and "when" of defendant's knowledge must be pleaded with particularity.  As for the relevant "who, what, where," again, the precise level of detail that must be "included in that first paragraph" of the "newspaper story" "may vary on the facts of a given case."  Pirelli, 631 F.3d at 441-42 (cleaned up).  And as plaintiff correctly notes, "[c]ourts in this circuit have recognized that the standard to state a fraudulent omission claim under Rule 9(b) is more relaxed than the typical fraud claim."  Patel, 2020 WL 6681348, at *2 (cleaned up).  Under the circumstances here, plaintiff has pleaded with enough particularly.

Indeed, she alleges: the "who" (defendant); the "what" (knowledge of scientific literature that suggested that there was a problem with the results of PGS testing, with strictly defining embryos as either euploid or aneuploid, with the resulting consequences of delivering aneuploid test results to patients, and with PGT-A testing being proven, accurate, and reliable); the "when" (before purchasing in 2022 and 2023); and the "where" and the "how" (by failing to inform

customers of this information either directly or in defendant's marketing and advertising, which caused plaintiff to purchase PGT-A testing that she would not otherwise have purchased and to suffer damages). The allegations clearly put defendants on notice of the basis for plaintiff's fraudulent concealment claim. See Vicom, Inc. v. Harbridge Merch. Servs., Inc., 20 F.3d 771, 777 (7th Cir. 1994) (explaining that one of the main purposes for heightened pleading is providing notice of the claim to the adverse party). The court therefore denies defendant's motion to dismiss Count V.

## Count VI

In Count VI, plaintiff pleads an unjust enrichment claim. "In Illinois, to state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." Cleary v. Philip Morris Inc., 656 F.3d 511, 516 (7th Cir. 2011) (cleaned up).[4] Although the Cleary court used the phrase "cause of action," it explained that as practical matter, unjust enrichment typically does not constitute an independent cause of action. Id. at 517. That is because "[w]hat makes the retention of the benefit unjust is often due to some improper conduct by the defendant" that also "form[s] the basis of another claim against the defendant in tort, contract, or statute." Id. And so, "unjust enrichment will [typically] stand or fall with the related claim." Id.

Here, plaintiff alleges in her complaint that she is pleading unjust enrichment "in the alternative to the[ ] other claims to the extent there is no adequate remedy at law," and she bases

---

[4]  Defendant again assumes that Illinois law governs this claim.   Plaintiff does not dispute this.

the claim on defendant's "scheme to market for PGT-A testing to increase sales through numerous false and misleading statements and material omissions."   Her unjust enrichment claim is thus related to the ICFA and fraud claims discussed above.   Because those latter claims may move forward, so too, it would seem, may her unjust enrichment claim.

But defendant argues that "a plaintiff may not recover under an unjust enrichment theory if there is an enforceable contract that governs the relevant subject matter."   (Citing Hernandez v. Illinois Inst. Of Tech., 63 F.4th 661, 671 (7th Cir. 2023)).   And here, defendant contends, defendant "has performed under the terms of the contract twice—once in October 2022 and again in July 2023."   So, defendant concludes, defendant has not been "'unjustly' enriched to" plaintiff's "detriment."

In response, plaintiff argues that she has not pleaded "the existence of a valid contract between herself and [d]efendant," and that courts "routinely permit plaintiffs to plead unjust enrichment 'in the alternative, even if the claims are contradictory.'"   (Quoting Prudential Ins. Co. v. Clark Consulting, Inc., 548 F. Supp. 2d 619, 623 (N.D. Ill. 2008)).   She therefore contends that defendant's motion fails.

In reply, defendant argues that plaintiff "completely mischaracterizes" defendant's assertions because "[n]ever once does [d]efendant state the phrase 'in the alternative.'" Plaintiff, defendant contends, instead misses the "real deficiency" here—"that there is a valid and enforceable contract governing the same subject matter," and thus an "adequate remedy at

law." And defendant's performance "under the contract," defendant concludes, negates unjust enrichment.

The court finds defendant's argument unpersuasive. Again, plaintiff's unjust enrichment claim is premised on fraud as the improper conduct, and plaintiff did not plead the existence of a valid contract. This, then, is not a situation in which a plaintiff is "entering the forbidden territory of asserting the existence of an enforceable contract as a component of his unjust enrichment claim." Hernandez, 63 F.4th at 672. The court consequently denies defendant's motion to dismiss Count VI.

### Count VII

Finally, in Count VII, plaintiff asserts a claim for violations of state laws codifying UCC § 2-313, the express warranty of merchantability. Under 810 ILCS 5/2-313(1)(a)-(b), "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise," and "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Generally, to state a claim for breach of express warranty, a plaintiff "must allege that the seller: (1) made an affirmation of fact or promise; (2) relating to the goods; (3) which was part of the basis for the bargain; and (4) guaranteed that the goods would conform to the affirmation or promise." O'Connor v. Ford Motor Co., 477 F. Supp. 3d 705, 714 (N.D. Ill. 2020) (citation omitted).

Defendant contends that plaintiff fails to state a viable express-warranty claim because she "fails to attach the written instruments upon which [her] claim is based or an affidavit stating

25

facts showing that the instrument is not accessible to [her], as required by 735 ICLS 5/2-606." Defendant further argues that her claim fails because she failed to notify defendant of the breach within a reasonable time, as required under 810 ILCS 5/2-607(3)(a). According to defendant, although plaintiff pleads in her complaint that she "'sent notice' of her claims on July 15, 2024," she does not state "who she sent this alleged notice to, and thus it is unclear from the Complaint whether [p]laintiff sent notice . . . at all." And even if she had sent the notice, defendant contends, she sent it 21 months after her first purchase of PGT-A and 12 months after her second purchase—which, defendant argues, amounts to an unreasonable delay as a matter of law.

Plaintiff asserts in response that she need not attach any documents to the complaint. And as for the notice itself, she contends that the complaint alleges that she sent notice on July 15, 2024—over two months before filing the complaint—which she suggests was a reasonable time after discovering the issue, and that the notice she sent (which she attaches to her response as an exhibit) satisfied section 5/2-607's lenient standards. And the sufficiency and reasonableness of the notice, she continues, are factual issues, anyway, and are thus inappropriate for dismissal.

The court again finds that plaintiff has the better arguments here. First, as already explained above, plaintiff did not need to attach any written documents to plead her claim in federal court. Second, defendant's argument about the notice—which defendant curiously did not raise for other claims, like the implied warranty claims—is unavailing at this stage of the litigation.

Under section 5/2-607, "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."

26

810 ILCS 5/2-607(3)(a). "The intent of this requirement is 'to encourage pre-suit settlement negotiations.'" O'Connor, 477 F. Supp. 3d at 715 (citation omitted). "When delay in notification does not result in prejudice to the defendant, it is not generally viewed as unreasonable." Al Maha Trading & Contracting Holding Co. v. W.S. Darley & Co., 936 F. Supp. 2d 933, 941 (N.D. Ill. 2013) (citation omitted).

Here, plaintiff pleaded that she "sent notice of . . . her . . . claims on July 15, 2024"— more than two months before she filed her complaint. This allegation is sufficient for pleading purposes under the circumstances of this case—which involves medical technology.[5] Defendant may ultimately be right that plaintiff's pre-suit notice was not sent within a reasonable time. But whether the year or two here was "a reasonable amount of time for [plaintiff] to discover the non-conformity and notify [defendant] of [her] concerns is a question of fact that cannot be resolved at this stage of the litigation." Al Maha, 936 F. Supp. 2d at 942 (denying defendant's motion to dismiss, which was based on defendant's assertion that a one-year delay in providing notice was unreasonable as a matter of law under section 2-607). The court consequently denies defendant's motion to dismiss Count VII.

## CONCLUSION

For the above reasons, the court grants in part and denies in part defendant's motion to dismiss [Doc. 18]. The court grants the motion to dismiss without prejudice as to Count I to the extent that Count I is based on a UDTPA claim. The court denies the motion to dismiss as to

---

[5]  The court notes that it has not considered the notice-exhibit plaintiff attached to her response brief. But even if it had, doing so would not have run afoul of Rule 12(d), at least because "a party opposing a Rule 12(b)(6) motion may submit materials outside the pleadings to illustrate the facts the party expects to be able to prove." Geinosky v. City of Chi., 675 F.3d 743, 745 n.1 (7th Cir. 2012).

Count I to the extent that Count I is based on an ICFA claim. The court further denies the motion to dismiss as to Counts II through VII. Defendant is directed to file its answer by March 6, 2026. The parties are directed to file a joint status report using this court's form on or before March 13, 2026.

So ordered.

**ENTER:**

**Robert W. Gettleman**
**United States District Judge**

**DATE: February 11, 2026**

28